I'm John Zelnost. I'm the pro bono appointed counsel for the appellant in this case, John Crout, who is accompanying the counsel table with his assistant Stephanie. Mr. Crout served his country in the Washington Army National Guard from 1985 to 1997, rising from an enlisted rank of E3 to a rank of E7, Sergeant First Class. In 1996, a new First Lieutenant came into his unit, and Sergeant First Class Crout's career plummeted from that point. He alleges that this First Lieutenant made a series of false allegations against him from the outset, accusing him of crimes or of things that he didn't commit, undermining him in front of his platoon, generally harassing him, and at one point even saying that he intended to get rid of Mr. Crout. Ultimately, there was a physical altercation between Mr. Crout and this First Lieutenant at some annual training in June of 1997. Mr. Crout alleged that this First Lieutenant became intoxicated and tried to get the keys from Mr. Crout of a military vehicle, and when Mr. Crout refused to give them to him, he struck him in the chest and thereafter encouraged a number of the enlisted personnel who were also drinking with the First Lieutenant, as Mr. Crout alleges, to file false evidence in the reports and in the investigation against him, ultimately resulting in a number of serious charges, some subject to court martial, against Mr. Crout, Sergeant First Class Crout. After he was charged in June of 1997, after approximately a 24-hour investigation with these four charges under the Washington Code of Military Justice, Mr. Crout filed an EEOC complaint and demanded a court martial proceeding. When this EEOC proceeding was resolved in October of 1997, the Guard essentially upped the ante and charged him again with another series of offenses, this time including poor performance of his duty as a Sergeant as well as insubordination from the June 19, 1997 incident. You know, we're familiar with these facts because we've read your brief. Why are not the claims against the state barred by the Eleventh Amendment and the claims against the state and the federal government barred by the Ferry's Doctrine? Your Honor, I think that under the Eleventh Amendment, the district court interpreted Mr. Crout's complaint as alleging a Title VII claim, Title VII, 42 U.S.C. 2000, Section 2000, E16. The Congress has abrogated the Eleventh Amendment immunity of the states and their agencies under Title VII. So his claim was not subject to dismissal solely on the basis of Title, or excuse me, of the Eleventh Amendment to the extent they were brought under Title VII. Now, as far as the Ferry's Doctrine, that's another hurdle to overcome. The cleanest reason why the Ferry's Doctrine should not apply in this case is that the Guard took retaliatory actions in sort of a continuum even after it regarded him as discharged. Now, under this Court's ruling in Hodge v. Dalton, the test for whether or not the Ferry's Doctrine applies is whether the plaintiff was subject to military control and discipline at the time that the alleged events occurred, or the retaliatory events in this case. There's various portions in the record that I could cite for the Court that the military regarded Mr. Crout, Sergeant First Class Crout, as discharged effective December 1st of 1997. At that point in time, he was no longer subject to direct military supervision and control. Their actions thereafter of sending information into his files, letters where they falsely represented that he had left the service in order to avoid the pending charges, as well as that the investigations against him had substantiated poor duty performance, were a continuum of the retaliatory actions that had been ongoing since he had first complained back in June of 1997 to the EEOC. Now, as far as the Federal defendants are concerned, there are, of course, during the period of annual training, we allege that those, you know, the Guard was essentially in the Federal service. Now, there is a case in this circuit, Lutz versus Secretary of the Air Force, and admittedly, the Doctrine of Fairness is enormously broad and has covered a huge variety of situations, but the Lutz case essentially involved a situation where some subordinate military members had gone against their superior officer, broken into her office, disseminated false information, done a series of really egregious acts against her, and this Court said that this is simply not incident to military service. We really can't say that this is incident to military service. It just goes beyond what normally would be expected. And in other cases, the Court has said that because the cases are essentially not reconcilable, what we have to do is really sort of compare fact patterns. And if you compare fact patterns of Lutz and the allegations that Mr. Kraut made in this case, he is alleging a conspiracy. The Court interpreted it as a violation of 42 U.S.C. section 1985-3, and he's alleging the conspiracy involved this first lieutenant as well as subordinate officers and enlisted personnel who were beneath him, who were fabricating evidence, putting in false information in an effort to impugn him and malign him and destroy his reputation and run him out of the Guard, much akin to the allegations that were made in Lutz. What were the events that occurred after the discharge date? Your Honor, after the discharge date, the events that occurred were the Army treated him as discharged as of December 1st. Thereafter, and this is actually in the record at the State's Supplemental Exhibit of Record for the State of Washington at tab 18, page B1. And what he did is essentially they sent information to the higher-ups, the chain of command, saying falsely that Mr. Kraut had purposely denied or avoided reenlisting into the Guard in order to avoid the pending charges against him, which was completely, according to Mr. Kraut, false. That's all he's ever wanted in this case, or most of all he's ever wanted, is an opportunity to clear his name, to remove the stain of the allegations. So we have that letter as dated December 15th of 1997. We also have the paperwork that they submitted accompanying that, which is supposed to be submitted by the enlisted person or the person in the service that essentially says, you know, hey, you're out of the Guard, you left, you left to avoid these things. Then there's a follow-up letter dated February, I think it's 3rd of 1998, where they have asked that he be given a Code 4, which is essentially a dishonorable discharge and precluded from ever entering the service again due to these allegations. My understanding from the record was that he had an honorable discharge? Yes, you're right, Your Honor. In July of 1998, he was first notified that he had been actually discharged from the service. He's waiting for his hearing, he's waiting for his process, and it never came. And in July of 1998, he gets a discharge with a Code 1. The fact that he has a discharge with a Code 1 is not sufficient to erase this retaliation claim that he has under Title 7. The fact that an employer might retaliate against an employee and have an adverse employment action against them because they engaged in protected activity is not remedied or corrected simply because six months later they say, well, hey, you can reenlist now if you want, or hey, you can reapply for your job if you want. You are correct. That is, that's what the Code was. Mr. Kraut is asking that the district court's decision be reversed and that it be remanded for further proceedings. Do you want to reserve time? I will reserve, if I have two minutes, I'll reserve that. Well, you're close to that. Okay. Thank you, Your Honor. Thank you. May it please the Court, my name is Major Susan Sutherland. I'm a Special Assistant U.S. Attorney for the Eastern District of Washington, representing the Department of Defense and the National Guard Bureau. With the Court's permission, I'd like to reserve the second half of my allocated time for my colleague from the State of Washington. Is the Major because you're in military service or is that your name? That's my rank. That's your rank. Okay. Thank you, Your Honor. The central issue in this case is whether a Federal court has jurisdiction over appellant's claims based on the facts alleged in his complaint. The district court properly held that it did not. The United States has not waived sovereign immunity over appellant's court claims and the remaining claims that may have been culled from his complaint simply do not present justiciable issues because they involve the discretion of the military and military personnel issues. Is that the distinguishing factor between this and the Lutz case? Yes, Your Honor. In the Lutz case, it's distinguishable on several grounds. First of all, the Lutz case involved charges against, or excuse me, claims against individuals and not the agency, which is what we have in this case. And secondly, it involves claims against coordinates and not superiors. And that is the gravamen of the non-judiciability doctrine is that Federal courts should not involve themselves in matters of military discipline, management, investigation, and in discharge matters such as this. And it's the intrusion that is to be avoided under the case law of the circuit. Let's explore that just a little bit. In this case, I mean, the factors that you, the facts that you identify do distinguish Lutz. But I'm wondering if it makes a difference because in this case, you have the military taking action after the person is no longer part of the military, which is alleged to injure his reputation. If we were to agree that that was barred by the Ferreris doctrine, military officials, officers could go into any military personnel, former military personnel file and do write anything they want about it. And there's no ability by the discharged person to have a remedy, to find redress for that. Your Honor, I think it's important on the facts of this case, and counsel himself referred to it as a continuum, and that the acts at issue here that happened immediately, or alleged retaliatory actions immediately after his discharge, were part of a continuum that began in 1996 and arose out of an altercation at the annual training and was clearly incident to his service. As far as your concern, Your Honor, that there's no remedy, there is a remedy at the Army Board for Correction of Military Records. He's specifically seeking correction of his records as far as it pertains to his discharge, as far as his evaluation reports. All of these things can be addressed through military channels, and then there is a federal court review, nurtupelle v. Wallace, based on the administrative board's decision in these issues. It's not something that the federal courts need to intrude upon. Major, remind me, you mentioned it was a continuum from the date of discharge, then when did these comments get written into his record after he'd been discharged? How long? The pawn has alleged that it happened almost immediately afterwards. Within a month? No more than six months. No more than six months? Well, because he was discharged December 1st, and then he said he found out about it shortly thereafter, and that's when he learned that there was an attempt to put a negative comment in his certificate that his reenlistment code would not be full eligibility. It's important to realize, however, that he was given full reenlistment eligibility and that he never pursued that remedy. With the Court's permission, I'd like to ---- Well, now, would the Mendez doctrine have anything, if I'm pronouncing that correctly, to do with the discretionary acts or whatever that occurred after he was discharged? Yes, Your Honor. Under the Mendez test, and that's where it's important to look at whether administrative remedies exist, because the threshold test for Mendez is, first, whether he's alleged a constitutional, statutory, or regulatory violation, but secondly, whether he's exhausted his available inter-service remedies. And as far as these claims concerning his inaccurate or improper entries in his records, he has not exhausted his available remedies at the Army Board for Correction of Military Records. Then, if he were to meet the threshold test, there are four balancing factors that looks at the strength and nature of his claims and the harm if his claims are not evaluated, and then looks at the intrusion of the courts looking into the matters involving management, discipline, and discharge. Is there anything, any obstacle you're aware of to Mr. Kraut pursuing that administrative remedy? The only obstacle at this point, Your Honor, is that there's a three-year statute of limitations to apply to the Corrections Board. However, that is routinely waived in the interest of justice, and he would be able to explain that he originally pursued court remedies and has come to this point. Thank you, Counsel. May it please the Court, Counsel. My name is Carl Waring. I'm the Assistant Attorney General representing the Washington State Army National Guard. Mr. Kraut's claims against the State have three fatal flaws. The first that I want to address is the statute of limitations. Here, Mr. Kraut clearly knew in July of 1998 that he had been discharged honorably from the Army National Guard, and he had a copy of his military personnel file. Mr. Kraut says in his own words in his pleadings in four different places that that is the That's the starting point on the statute of limitations. He fails to file suit against the State of Washington until March of 2002, and that's the earliest date that he could have filed suit. According to the record, when we look at the docket sheet from the district court, that first and the second complaint were actually rejected. But giving him the benefit of the doubt, using March 2002 as a date, he still will be on the three-year statute of limitations. Now, in this regard, Mr. Kraut really makes only one argument, and he says that equitable estoppel should be applied as against the State to prevent us from asserting the statute of limitations, claiming that he was told all these matters would be resolved before he was discharged. But equitable estoppel requires that you don't have actual knowledge or knowledge of the true facts. And in this case, his pleadings belie his claim that he didn't have true knowledge, because in July of 1998, he got a copy of his personnel file. He got a copy of his discharge paperwork. So he knew at that point equitable estoppel cannot be applied from that point on. Because of these deficiencies with the statute of limitations, Mr. Kraut's claims against the State defendants should be dismissed. What about the Eleventh Amendment defense? The Eleventh Amendment is the second point, Your Honor, and that actually bars Mr. Kraut's claims against the State. He says, though, there's something about Title VII that would make a difference. How do you respond to that? Well, this Court, the Ninth Circuit, has held in at least three different cases, Gonzalez v. Army, Meyer v. Owens, and Hodge v. Dalton, that Title VII doesn't apply to uniformed military personnel. So it's a nonissue. And the Eleventh Amendment does apply in this case. The Eleventh Amendment applies to all other claims because Title VII can't be stated against uniformed military personnel. There's no need for the Eleventh Amendment defense in that regard. So as to any of his issues with the Eleventh Amendment, Your Honor, there's essentially two ways that you can get around the Eleventh Amendment to the State and Federal Court. Congress abrogates the Eleventh Amendment, or the State waives its Eleventh Amendment immunity. Having said that, let me turn real quickly. There were individuals who were named in the caption of this lawsuit, but never served. So the question of whether or not he's properly served or named individuals isn't an issue before the Court. So turning back to the other two points, nobody's argued abrogation except with regard to Title VII. We already know that doesn't apply based on three decisions from this Court. So the next question is, did the State waive? And the State didn't waive. There's two requirements to show a waiver on the part of the State. The State has to participate, voluntarily participate in a program, and Congress in that program has to name that a group of defendants, which would include the State, could be sued based on that participation. Here, the USC that's in question is Title XXXII, and there is no provision there that would allow for States to be sued. Moreover, Title XXXII is actually imposed upon the State because the State's... I'm sorry, I see my time is up. You can finish your sentence. Just briefly, it just goes without saying, the Eleventh Amendment prohibits the claims. We also believe that Ferry's Doctrine applies. That issue's been covered. We ask this Court to affirm the District Court's order for dismissing Mr. Kraut's claims against the State, if not for the two reasons they stated, then for the statute of limitations. Thank you. Thank you, Your Honor. Briefly, on the first point, I have discovered a case called Serrato v. San Francisco Community College, which is 26F 3rd 968, which indicates that the Eleventh Amendment immunity has in fact been abrogated by Congress under Title VII. And I think they specifically cite 42 U.S.C. Section 2000 in that case. Would you give a slip to the clerk here to write this cite to that? That's not in your briefs? You're correct, Your Honor. It's not in the brief. Yes, please write it down and also just say it one more time. Okay, it's Serrato, and that's C-E-R-R-A-T-O v. San Francisco Community College District. And it's 26 F 3rd 968. That's Ninth Circuit, 1994. The other part here has been some discussion about how the Board of Correctional Military Records would somehow provide a remedy for Mr. Crouch. I think if he was purely correcting an error in his records, that might be the case. However, he does have a Title VII claim, and there's no jurisdiction of the Board of Military Corrective Records to hear and adjudicate a Title VII claim. That rests exclusively within the federal court, the district court. This case does provide a very clean basis to distinguish Ferris. What about the statute of limitations? The statute of limitations is an issue. It was not decided below. I think there are issues in this case as to claim accrual, as to when he in fact knew or should have known that he had the claims that he has. I think there's also issues as to whether or not there should be some estoppel applied against the government for misconduct, and that's cited out in the brief. By essentially discharging him without notifying him and letting time go by and waiting until he discovered the facts, he is an individual If they don't argue accrual until July of 98, when he says he acquired his military record, then the State hasn't put him at any disadvantage up to that point. He knows what he needs to know in July of 98, doesn't he? Well, I think you could argue certainly that there is a basis to say that whatever statutory claims he had commenced at that time. What we're asking is that this Court not resolve that question for the first time on appeal. The district court Let me just ask the question. Was the statute of limitations raised as a defense or was there never an answer filed? I am not aware. I'm not aware if it was or not. I'm not prepared to represent that it wasn't. I just know that the district court never addressed that issue per se, and I think there's facts here that could be developed that might provide a remedy for Mr. Kraut.  for the first time on appeal. Thank you. Thank you, Counsel. Thank you. Kraut v. Washington will be submitted and will take up
judges: Thompson, T. Nelson, Wardlaw